# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Rain Air Benelux, B.V.B.A. and
Benjamin Ginsburg,

        Plaintiffs,

v.

Rexair, LLC,

        Defendant.

_____/

Case No. 17-cv-10773

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [18]**

This is a diversity case in which plaintiffs bring four counts: breach of contract, tortious interference with a business relationship or expectancy, conversion, and declaratory judgment (based on the alleged contract). (Dkt. 16.) Plaintiffs, Rain Air Benelux, B.V.B.A. (a Belgian corporation) and Benjamin Ginsberg (sole owner of Rain Air Benelux, B.V.B.A.) sell vacuums manufactured by defendant. Plaintiffs primarily allege that defendant Rexair violated a 2002 exclusive distributorship agreement covering Belgium by allowing competitors to sell in the same region. Before the Court is defendant's motion to

dismiss the first amended complaint for failure to state a claim. (Dkt. 18.) The Court heard oral argument on the motion on August 8, 2017. For the reasons set forth below, defendant's motion to dismiss is granted.

I.  **Background**

Because the case is before the Court on defendant's motion to dismiss, the following background is drawn from plaintiff's complaint, accepting all allegations as true and in the light most favorable to plaintiff unless otherwise noted.

Rexair is a Delaware corporation with its principal place of business in Michigan. (Dkt. 16 at 1.) Rexair manufactures Rainbow vacuums and accessories, which it sells exclusively through independent authorized distributors worldwide. (*Id.* at 2.) Rexair uses a multi-tiered distribution network with a program that includes cash awards and all-expenses paid trips to incentivize distributors to meet sales goals and grow their sales networks. (*Id.*) BGF—a UK company to which Rain Air Benelux is the successor in interest—was one of those distributors. (*Id.* at 4.)

BGF and Rexair's relationship began in 1992. They had various disputes during the course of their relationship, including litigation on both sides, that resulted in a 2002 Confidential Settlement Agreement to resolve the pending disputes. (*Id.*) In one relevant section of the settlement agreement, Rexair agreed to "execute a new Rainbow International Distributor Agreement" with BGF "for a term of three years" as the sole regional distributor in Belgium and entitling BGF to participate fully in Rexair's incentive program. (*Id.*) Rexair also agreed in the settlement that the new distributor agreement ("2002 distributor agreement") "shall be renewed annually" if BGF obtained "reasonable market penetration as agreed upon by the parties." (*Id.*)

The 2002 distributor agreement was to terminate on December 31, 2005 (a period of slightly over three years from formation of the agreement), except that Rexair:

> *shall renew this Agreement* at the end of the initial term provided that Distributor has performed its obligations under this Agreement in accordance with standards applicable to other similarly situated Registered General Distributors. Any renewal term shall be for a term of three years, beginning on January 1 of the first year of such renewal term, and ending on December 31 of the third year thereafter. *Any such renewal of this Agreement shall only be effective if executed in writing by Rexair's Chief Executive*

3

> *Officer, President, or Vice President of Marketing. No other renewal or attempted renewal of this Agreement shall be effective.*

(*Id.* at 5 (emphasis added).) Plaintiffs became the successors to the rights and obligations of BGF in 2008, three years after the contract's original December 2005 termination date. (*Id.* at 6.) BGF fulfilled all of its obligations to trigger the requirement that Rexair renew the contract for three-year terms, and the renewal is evidenced by Rexair's repeated acknowledgement that Rain Air Benelux is an active distributor, including the award of a Certificate of Excellence. (*Id.* at 6-7.) Plaintiffs do not allege that there is a written agreement to renew.

Plaintiffs allege that Rexair has breached its contractual obligations, "most generally by refusing to treat Rain Air comparably to other International Distributors." (*Id.* at 7.) Examples of Rexair's non-comparable treatment of Rain Air Benelux include: extending more generous payment terms to competitors of Rain Air Benelux, refusing to promote well-qualified Rain Air Benelux sub-distributors, and refusing to protect Rain Air Benelux's exclusive distribution rights in Belgium. (*Id.*)

According to plaintiffs, Rexair also tortiously interfered with Rain Air Benelux's business relationships by telling at least fifty of Rain Air Benelux's sub-distributors at a conference that plaintiff Ginsburg is a "cheap Jew" who would not pay bonuses. (*Id.* at 9-10.) And plaintiffs claim Rexair is liable for statutory conversion under MICH. COMP. LAWS § 600.2919a, because a Rexair distributor from Holland purchased a customer list of 15,000 Rain Air Benelux customers from a disgruntled Rain Air Benelux employee who had stolen the list, and Rexair profited from the Dutch distributor's wrongful use of the stolen list. (*Id.* at 10.) Finally, plaintiffs seek a declaration that (1) determines the parties are still bound by the terms of the 2002 distributor agreement, and (2) sends the dispute to arbitration per the arbitration clause therein. (*Id.* at 11.)

Defendant moved to dismiss all counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*,

5

684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III. Analysis**

*a. Plaintiffs fail to plead that a contract exists under Michigan law*

Under Michigan law, "a party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v. Bennett*, 303 Mich. App. 767, 774 (2013) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56, 71 (2012)).

Plaintiffs argue that the continuous existence of an ongoing business relationship between Rain Air Benelux and Rexair "[f]rom the date of execution [of the 2002 distributor agreement between BGF and Rexair] to the present" proves that their contract was renewed by

implication and therefore forms an ongoing and valid contractual agreement between the parties. (Dkt. 16 at 6-7.)

Plaintiffs' argument that it was renewed by implication is without merit because by the plain terms of the contract it could be renewed only "in writing by Rexair's Chief Executive Officer, President, or Vice President of Marketing," and "[n]o other renewal or attempted renewal of this Agreement shall be effective." (Dkt. 16 at 5.) Under Michigan law, the Court is to give effect to the language of the contract where it is plain and unambiguous, as it is here. *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs.*, 323 F.3d 348, 357 (6th Cir. 2003) (citing *Haywood v. Fowler*, 190 Mich. App. 253, 258 (1991)).

Plaintiffs' argument in the alternative – that the continued business relationship between Rexair and Rain Air Benelux, despite the lack of a signed written agreement, constitutes a waiver of a condition precedent to the contract – is also without merit. As this Court previously held, under Michigan law, "an unwritten agreement to renew a contract for a term longer than one year is void under the statute of frauds." *Ruehle's Towing, Inc. v. Charter Twp. of Shelby*, No. 15-cv-13802, 2016 WL 2899442, at *4 (E.D. Mich., May 18, 2016) (internal

7

citations omitted). Even accepting plaintiffs' argument that the relationship continued much as it had under the original written terms of the 2002 agreement, defendant cannot be bound by a three-year "renewal" that is not in writing.

Plaintiffs seem to argue that the contract had to be renewed in 2005 because, by its terms, defendant "shall renew this Agreement at the end of the initial term provided that Distributor has performed its obligations under this Agreement in accordance with standards applicable to other similarly situated Registered General Distributors," and plaintiffs pleaded that they did so perform. But the fact remains that defendant did not renew the contract in writing, as required, and plaintiffs concede the point—there is no written renewal. Any breach of this provision would thus accrue as a claim in 2005, when the mandatory renewal provision kicked in, and therefore falls outside Michigan's six-year statute of limitations for breach of contract claims. *See* MICH. COMP. LAWS § 600.5807(8).

As to the settlement agreement itself, a settlement is interpreted just as any other contract. *MLW Assocs. v. Certified Tool & Mfg. Corp.*, 106 F. App'x 307, 312 (6th Cir. 2004). And by its terms, defendant was

required to "execute a new Rainbow International Distributor Agreement" with BGF "for a term of three years" to reappoint it the sole regional distributor in Belgium and to permit BGF to participate fully in Rexair's incentive program. Defendant did so—it executed the 2002 distributor agreement with plaintiffs for such a period and with such terms. By the plain language of the settlement agreement, defendant fulfilled its obligation.

Accordingly, because plaintiffs fail to plead the existence of a valid, written three-year agreement, the Count I breach of contract claim must be dismissed. Moreover, any breach that may have occurred between 2002 and 2005 is outside the statute of limitations. Without an underlying valid contractual agreement, plaintiff's Count IV claim for declaratory relief must also be dismissed.

> *b. Plaintiffs fail to sufficiently plead a tortious interference claim under Michigan law*

The elements of tortious interference with a business relationship or expectancy are: "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant

inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call v. Atrium Home & Health Care Servs.*, 268 Mich. App. 83, 90 (2005).

According to plaintiffs, Rexair said that Mr. Ginsberg was a "cheap Jew" who would not pay bonuses to his sub-distributors in front of fifty Rain Air Benelux sub-distributors. Plaintiffs argue that this demotivated Rain Air Benelux employees from making the same efforts to sell products as they otherwise would have. (Dkt. 24 at 21.) Defendant argues that plaintiffs fail to provide any "factual support for" the allegation that this "interfere[d] with business relationships and expectancies." (Dkt. 18 at 19.) Specifically, defendant argues that plaintiffs fail to identify any such business relationships or expectancies or otherwise plead with particularity how plaintiffs were damaged.

Defendant further argues that Michigan law "is clear that [plaintiffs] must show that any alleged interference *caused a breach or termination* of a business relationship or expectancy." (Dkt. 25 at 6-7, n.3. (emphasis added)). Plaintiffs allege that Rexair's conduct interfered with and disrupted business relationships and expectancies

10

(Dkt. 16 at 10), but plaintiffs do not allege any facts to indicate that defendants interference caused a breach or termination of a business relationship or expectancy.

As defendant correctly argues, "to prevail on a claim for tortious interference with a business relationship or expectancy in Michigan, a plaintiff must show 'the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant *inducing or causing a breach or termination of the relationship or expectancy*, and resultant damage to the plaintiff.'" *Reliable Carriers, Inc., v. Excellence Auto Carriers, Inc.,* No. 11-CV-15326, 2012 WL 1931519, at*2 (E.D. Mich. May 29, 2012) (quoting *BPS Clinical Lab. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 698-99 (1996))(emphasis added). Because in this case plaintiffs fail to identify any business relationship or expectancy that was breached or terminated, plaintiffs fail to state a valid claim for tortious interference of a business relationship. Accordingly, plaintiffs' Count II claim for tortious interference of a business relationship must be dismissed.

> c. *Plaintiffs fail to plead a conversion claim under Michigan law*

11

In Michigan, a statutory conversion claim requires plaintiffs to plead that they were "damaged as a result of" defendant either (a) "stealing or embezzling property or converting property to [defendant's] own use;" or (b) "buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled or converted." MICH. COMP. LAWS § 600.2919a(1)(a)-(b).

Plaintiffs allege that a Rexair distributor in Holland purchased a list of 15,000 Rain Air Benelux customers from a disgruntled Rain Air Benelux employee who had stolen the list. (Dkt. 16 at 10.) Plaintiffs also allege that Rexair was aware of the theft, and they repeatedly demanded that Rexair take action to prevent the customer list from being wrongfully used, but that Rexair instead "financed its Dutch dealer in setting up another former Rain Air dealer . . . on the Dutch-Belgian border and soliciting Rain Air's past and present salesforce list, also a confidential list." (*Id*.) Finally, plaintiffs allege that Rexair profited from the Dutch distributor's theft of Rain Air's customer use.

(*Id.*) Plaintiffs argue that Rexair's failure to prevent the wrongful use of the stolen list and its subsequent profiting from wrongful use of the list amounts to "converting property to its own use."

By the terms of the statute, plaintiffs do not sufficiently plead a claim for conversion. Under Michigan law, conversion to [the other party's] own use "requires a showing that the *defendant* employed the converted property for some purpose personal to the defendant's interest." *Aroma Wines*, 497 Mich. 337 at 359 (emphasis added). While Michigan law acknowledges that "own use" does not require that the converted property be used for its ordinarily intended purpose, *id.* at 360 (asserting that the act of *moving* stored wine in order to undertake a renovation project was an act employing the wine for the storage company's own purposes), this broad understanding still requires that the defendant be the actor employing the property.

Plaintiffs do not allege that Rexair itself employed the property in any way. Instead, plaintiffs allege that Rexair *profited from* a third party's employment of the list. (Dkt. 16 at 10.) Without alleging that Rexair employed the property, plaintiff does not sufficiently plead the elements required for statutory conversion under Michigan law.

Accordingly, plaintiffs' Count IV claim for statutory conversion must be dismissed.

IV. **Conclusion**

For the reasons set for above, defendant's motion to dismiss (Dkt. 18) is GRANTED and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: September 25, 2017  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2017.

s/Shawna Burns
SHAWNA BURNS
Case Manager